NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE FLOWSERVE CORPORATION f/k/a THE DURAMETALLIC CORPORATION,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES FIRE INSURANCE COMPANY,<br><br>　　　　　　　　　Defendant. | **OPINION**<br><br>No. 2:14-cv-00676 (WHW) |

**Walls, Senior District Judge**

Defendant United States Fire Insurance Company ("US Fire") moves to compel arbitration and dismiss Plaintiff The Flowserve Corporation's ("Flowserve") complaint. Flowserve opposes. Under Federal Rule of Civil Procedure 78(b), this motion is decided without oral argument. US Fire's motion to compel arbitration and to dismiss the complaint is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

US Fire issued certain policies of general liability and umbrella liability insurance to Durametallic Corporation (now known as Flowserve) from December 31, 1972 through December 31, 1977. Compl. ¶ 4. Beginning in the 1990s and continuing through the present, Flowserve has been sued in thousands of actions across the United States by individuals who contend that they sustained bodily injury as a result of exposure to products manufactured, distributed, and/or sold by Durametallic which allegedly contained asbestos components (the "Asbestos Claims"). *Id.* ¶ 5.

**NOT FOR PUBLICATION**

As a result, Flowserve tendered the Asbestos Claims to various insurance companies, including US Fire, seeking defense and indemnification under their policies. *Id.* ¶ 4.

In or about January 1998, US Fire filed a declaratory judgment action against Durametallic and several other of Durametallic's insurers for a determination of the insurers' respective obligations to defend and/or indemnify Durametallic in connection with the Asbestos Claims. *Id.* ¶ 6. As a result of that lawsuit, about November 2000, Flowserve entered into a Settlement and Cost Sharing Agreement ("SCSA") with US Fire, as well as all of the other Durametallic insurers in that lawsuit. *Id.* ¶ 8. The SCSA "was intended by Flowserve and all of the Durametallic primary and umbrella insurers to be comprehensive and resolve all issues with respect to the claims for relief in the [lawsuit] in connection with Flowserve's contractual rights for defense and indemnity coverage for the Asbestos Claims." *Id.*; *see also* Certification of Heather E. Simpson ("Simpson Cert.") Ex. A at 2 ("the Parties desire to enter into this Agreement and to settle their differences and resolve any and all disputes of any type whatsoever with respect to Asbestos claims . . . on the terms and conditions set forth herein"). Under the SCSA, the insurers and Flowserve agreed to certain percentage contributions towards Flowserve's defense and indemnity costs in connection with the Asbestos Claims. *See id.* at 17-18.

The SCSA included an arbitration clause, in which the parties to the SCSA agreed that any disputes arising from the agreement would be determined by binding arbitration:

> VI.   <u>Audit and Disputes</u>
>
> (a) If any Party disputes the interpretation or application of any of the terms or conditions of this Agreement, the Parties shall use their best efforts to reach a prompt resolution of said dispute. In the event that they were unable to do so, any such dispute shall be determined by binding arbitration by and pursuant to the Rules of the American Arbitration Association.

*Id.* at 7 (the "Arbitration Clause").

**NOT FOR PUBLICATION**

On or about February 2001, US Fire entered into a separate Settlement Agreement and Release ("Side Agreement") with Flowserve. Compl. ¶ 9; Simpson Cert. Ex. B. Under the terms and conditions of the Side Agreement, Flowserve and US Fire agreed to modify US Fire's defense cost and indemnity obligations under the SCSA. *Id.* The Side Agreement contains a provision that states: "Any provisions in the [SCSA] that are not inconsistent with the terms of the Side Agreement shall remain binding upon U.S. Fire and Durametallic." Simpson Cert. Ex. B ¶ 6.

By letter dated October 22, 2013, US Fire advised Flowserve that, under the terms of the SCSA and the Side Agreement, US Fire had exhausted its total policy limits and would no longer contribute to the defense and indemnification of the Asbestos Claims. Compl. ¶ 10. On December 12, 2013, Flowserve began the present declaratory judgment action against US Fire in the Superior Court of New Jersey for Union County. On January 31, 2014, US Fire removed that matter to this Court and now seeks to compel arbitration and dismissal of the complaint. ECF Nos. 1, 5.

## STANDARD OF REVIEW

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Reynolds*, 537 U.S. 79, 83 (2002) (citations omitted). While the U.S. Supreme Court "has long recognized and enforced a 'liberal federal policy favoring arbitration agreements,' . . . the question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Id.* (citations omitted). "Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id.* at 84 (citations omitted). "[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Id.*

**NOT FOR PUBLICATION**

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The SCSA is governed by New Jersey law. *See* Simpson Cert. Ex. A § XV(e). The New Jersey Supreme Court has held that, "[i]n New Jersey, arbitration [] is a favored means of dispute resolution," and that there is a "strong public policy favoring the settlement of disputes through arbitration." *Hojnowski v. Vans Skate Park*, 187 N.J. 323, 342-43 (2006). Thus, agreements to arbitrate are valid except in cases where there exists grounds for revocation of the contract, *id.* at 342, such as "fraud, duress, or unconscionability in the signing of the contract," *id.* at 346, and "[a] court generally will enforce an arbitration agreement unless it violates public policy," *id.* at 343 (citing *Faherty v. Faherty*, 97 N.J. 99, 105 (1984)). *Accord AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1720, 1745 (2011) (under the Federal Arbitration Act, agreements to arbitrate will be deemed "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

The U.S. Supreme Court has also held that, "where [a] contract contains an arbitration clause, there is a presumption of arbitrability [and d]oubts should be resolved in favor of coverage." *AT&T Tech., Inc. v. Comm'n Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability"). A motion to compel arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc.*, 475 U.S.

**NOT FOR PUBLICATION**

at 650; *see also Varallo v. Elkins Park Hosp.*, 63 Fed. App'x 601, 603 (3d Cir. 2003) (same). When determining whether a given claim falls within the scope of an arbitration agreement, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted" and "[i]f these factual allegations 'touch matters' covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them." *Varallo*, 63 Fed. App'x at 603 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624-25 n.13 (1985)).

Finally, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Tech., Inc.*, 475 U.S. at 649. Thus, "procedural questions which grow out of the dispute and bear on its final disposition," such as "[i]ssues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam*, 537 U.S. at 84-85 (2002) (citations omitted); *see also Merrill Lynch, Pierce, Fenner & Smith v. Cantone Research, Inc.*, 427 N.J. Super. 45, 59 (App. Div. 2012) (matters of procedural arbitrability, i.e. "whether a party has met the procedural conditions for arbitration . . . should be left to the arbitrator").

**DISCUSSION**

As an initial matter, US Fire asserts that a motion to compel arbitration involves a two-step inquiry: 1) whether a valid agreement to arbitrate exists; and 2) whether the particular dispute falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). As to the first factor, US Fire argues that there can be no dispute that the SCSA entered into between US Fire and Flowserve contained an arbitration provision that expressly contemplated that any disputes among the parties as to their respective obligations under the SCSA

5

**NOT FOR PUBLICATION**

would be determined by binding arbitration. *See* Simpson Cert. Ex. A at 7. US Fire also points out that Section VIII(b) of the SCSA further states that the parties agree to binding arbitration of disputes over the carrier's respective allocation percentages or ability to terminate their participation in the defense and indemnification of the Asbestos Claims. *See id.* at 8. US Fire asserts that both parties were represented by counsel in connection with the SCSA and that both parties voluntarily assented to the terms contained therein, including the Arbitration Clause. It further contends that both US Fire and Flowserve executed the SCSA on behalf of their respective companies, and as a result, a valid agreement to arbitrate exists between them.

As to the second step of the inquiry, US Fire argues that it is clear that the current dispute falls within the scope of the Arbitration Clause. US Fire supports this argument by pointing to the recitals to the SCSA that expressly state that the parties "desire to enter into this Agreement and settle their differences and resolve any and all disputes of any type whatsoever with respect to the Asbestos claims." *See id.* at 2. US Fire also refers to the language of the Arbitration Clause, which applies to disputes regarding the "interpretation or application of any of the terms or conditions of [the] Agreement" and states that "any such dispute shall be determined by binding arbitration." *Id.* at 7.

US Fire also says that the Side Agreement incorporates the Arbitration Clause from the SCSA. US Fire asserts that although the Side Agreement was intended to alter certain terms of the SCSA, it expressly stated that "[a]ny provisions in the [SCSA] that are not inconsistent with the terms of the Side Agreement shall remain binding upon U.S. Fire and Durametallic." Simpson Cert. Ex. B ¶ 6. According to US Fire, nothing in the Side Agreement purports to remove or invalidate the binding Arbitration Clause, and so, the Arbitration Clause is incorporated into the Side Agreement and is binding upon the parties.

**NOT FOR PUBLICATION**

In summary, US Fire declares that the current dispute between the parties is whether US Fire has satisfied its obligations under the SCSA and Side Agreement or whether US Fire has a continuing obligation to provide defense and indemnification to Flowserve in connection with the Asbestos Claims. Because the SCSA and Side Agreement were intended to "resolve any and all disputes of any type whatsoever" between US Fire and Flowserve in connection with the Asbestos Claims, US Fire argues that Flowserve cannot assert any reasonable argument that the current dispute is outside the scope of the Arbitration Clause.

Flowserve responds to US Fire's motion to compel arbitration by arguing that the Arbitration Clause is inapplicable to this matter because US Fire breached three conditions precedent to its enforcement. First, Flowserve claims that under Section V(b) of the SCSA, US Fire was required to provide notice to all parties to the SCSA upon its payment of ninety percent of the applicable policy limits of liability of each of the umbrella policies, and that US Fire failed to send any such notice. Second, Flowserve asserts that the SCSA requires that any Durametallic insurer which "claims that its applicable limits of liability have been exhausted . . . shall provide reasonable documentation to substantiate its position," Simpson Cert. Ex. A at 6, and US Fire did not provide reasonable documentation to substantiate its position. Finally, Flowserve contends that US Fire is in material breach (and continues to be in material breach) of the SCSA because it ceased making payments in accordance with the SCSA and Side Agreement during the pendency of this dispute. This is in violation of the SCSA, that if any party "disputes the amount or percentage of any payment allocated to it under the terms and conditions of this Agreement, said Party shall nonetheless be required to make such payments . . . during the pendency of any such dispute" subject to a reservation of rights. *Id.* at 7. Flowserve charges that US Fire has refused to make any further payments. And because US Fire has intentionally refused to comply with these

**NOT FOR PUBLICATION**

three conditions precedent to arbitration, it is not now entitled to seek compliance with the Arbitration Clause.

Flowserve also argues that US Fire's motion to compel arbitration should be denied because its claims for relief against US Fire are not limited to the terms and conditions of the SCSA, but rather involve claims for relief under (1) the Side Agreement between Flowserve and US Fire dated February 5, 2001, and (2) the umbrella policies. According to Flowserve, neither the Side Agreement nor the umbrella policies contain any type of arbitration provision. Flowserve contends that the language that US Fire quotes from the Side Agreement does not incorporate the arbitration clause into the Side Agreement. The Side Agreement states that: "Any provisions in the [SCSA] that are not inconsistent with the terms of the Side Agreement shall remain binding upon US Fire and Durametallic." Simpson Cert. Ex. B ¶ 6. Flowserve says that this language unambiguously means that if the parties changed something from the SCSA in the Side Agreement, the later document would control. Because there is nothing in the Side Agreement that mentions arbitration, Flowserve argues, this provision does not function to incorporate the arbitration provision into the Side Agreement, and accordingly Flowserve's claims relating to the Side Agreement and umbrella policies are not subject to arbitration.

This Court agrees with US Fire that this dispute is subject to binding arbitration. A motion to compel arbitration calls for "a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg.*, 401 F.3d at 532. In "determining both the existence and scope of an arbitration agreement, there is a presumption in favor of arbitrability." *Id.* As to the first step, in this case there can be no dispute that the SCSA entered into by US Fire and Flowserve contained an arbitration provision agreed to by both parties, who were represented by counsel. Representatives of the parties executed the

**NOT FOR PUBLICATION**

SCSA containing that arbitration provision on behalf of their respective companies. As a result, a valid agreement to arbitrate exists between the parties. As to the second step of the inquiry, there is also no doubt that the current dispute falls within the scope of the Arbitration Clause. The dispute between these parties is whether US Fire has satisfied its obligations under the SCSA and Side Agreement or whether US Fire has a continuing obligation to provide defense and indemnification to Flowserve in connection with the Asbestos Claims. The SCSA and Side Agreement were intended to "resolve any and all disputes of any type whatsoever" between US Fire and Flowserve in connection with the Asbestos Claims, and even Flowserve acknowledged in its complaint that the SCSA "was intended . . . to be comprehensive and resolve all issues" in connection with the Asbestos Claims. Compl. ¶ 8. Given the language of the recitals to the SCSA and the Arbitration Clause itself, this Court has no doubt that the current dispute falls within the scope of the Arbitration Clause of the SCSA.

The Court is not persuaded by Flowserve's argument that US Fire is not entitled to enforce the Arbitration Clause of the SCSA because US Fire failed to comply with three conditions precedent to enforcing that clause. This argument is foreclosed by well settled law. Courts distinguish between substantive arbitrability, which refers to "whether the particular grievance is within the scope of the arbitration clause," and procedural arbitrability, which refers to "whether a party has met the procedural conditions for arbitration." *Merrill Lynch*, 427 N.J. Super. at 59. Issues of substantive arbitrability are generally decided by the court, but matters of procedural arbitrability "should be left to the arbitrator." *Id.* "[T]he fact that something is a condition precedent to arbitration does not make it any less a procedural question to be determined by the arbitrator." *Commerce Bank, N.A. v. DiMaria Constr., Inc.*, 300 N.J. Super. 9, 57 (App. Div. 1997) (citing *PaineWebber, Inc. v. Elahi*, 87 F.3d 589, 600-01 (1st Cir. 1996)). Whether the three

**NOT FOR PUBLICATION**

"conditions precedent" Flowserve lists in its brief are "conditions precedent" that US Fire has violated is irrelevant to this Court's decision on this motion to compel arbitration. *See Howsam v. Reynolds*, 537 U.S. 79, 85 (2002) ("Issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.").

Nor is this Court persuaded by Flowserve's argument that the Side Agreement and umbrella policies are not subject to binding arbitration because they do not contain arbitration provisions. First, as to the umbrella policies, any dispute between Flowserve and one of its insurers arising from the SCSA would necessarily involve a claim for relief under that insurer's policy. Despite the absence of an arbitration clause in the insurance policies, the parties expressly agreed to refer all disputes relating to the SCSA to binding arbitration. It is illogical to argue that the lack of an arbitration clause in the US Fire policies precludes this matter from being arbitrated. And as to the Side Agreement not containing an arbitration clause—it did not need to. The parties had agreed to arbitrate all disputes by way of the SCSA; the Side Agreement was intended to alter the percentages owed by US Fire—it expressly did not alter the remaining agreement terms between US Fire and Flowserve, including the Arbitration Clause. To the contrary, the Side Agreement specifically reads: "[a]ny provisions in the [SCSA] that are not inconsistent with the terms of the Side Agreement shall remain binding upon U.S. Fire and Durametallic." Simpson Cert. Ex. B ¶ 6. This language unambiguously means that all provisions in the SCSA not addressed or changed in the Side Agreement apply to the Side Agreement. This Court will enforce the Arbitration Clause and grant US Fire's motion to compel arbitration and dismiss the complaint.

**NOT FOR PUBLICATION**

## CONCLUSION

US Fire's motion to compel arbitration and dismissal of the complaint is granted. An appropriate order follows.


Date: May 7, 2014


/s/ William H. Walls
United States Senior District Judge